**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GH AMERICA ENERGY LLC,** | |
| Plaintiff, | |
| -against- | **1:24-cv-05645-ALC** |
| **GREENALIA WIND POWER BLUE HILLS, LLC,** | **OPINION & ORDER** |
| Defendants. | |

**ANDREW L. CARTER JR., United States District Judge**:

Plaintiff GH America Energy LLC ("GHAE") brings this action against Defendant Greenalia Wind Power Blue Hills, LLC ("Blue Hills") alleging breach of contract. In the instant motion, Defendant moves to dismiss the Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)–(3) for lack of subject matter, personal jurisdiction, improper venue, *forum non conveniens*, as well as pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, the Defendant's motion to dismiss is hereby **GRANTED**.

## STATEMENT OF FACTS

The Court assumes the parties' familiarity with the facts, which are set forth more fully in the Complaint. ECF No. 3. Plaintiff GHAE is a limited liability company formed under the laws of Texas with its principal place of business located at 2800 Post Oak Boulevard, Suite 5115, Houston, Texas 77056. *Id*. at ¶ 1. GHAE's sole member is Luxemburg Irtysh Petroleum Sari, LLC, a Luxemburg limited liability company, whose sole member is Xingjiang Guanghui Petroleum Co., Ltd., a corporation formed under the laws of the People's Republic of China. *Id*.

1

Defendant Blue Hills is a limited liability company. *Id*. at ¶ 2. Plaintiff claims that Defendant Blue Hills' sole member is Greenalia Power US, Inc. ("Greenalia"), a Delaware corporation with its principal place of business at 230 Park Avenue, Suite 2840, New York, New York 10169. *Id*.

Beginning in 2021, GHAE, a Texas-based renewable energy company, was developing wind energy projects in Val Verde County, Texas. *Id*. at ¶ 6. On June 7, 2021, the Texas state legislature enacted The Lone Star Infrastructure Protection Act ("LSIPA"), which prohibits businesses owned by citizens of China, Iran, North Korea, or Russia from entering into agreements granting them direct or remote access to critical infrastructure, including the Texas electric grid. *Id.* at ¶ 6-7. At the time of LSIPA's enactment, GHAE had several interconnection requests pending with the Electric Reliability Council of Texas ("ERCOT"), including one request for a 276-megawatt wind energy project known as the Blue Hills Wind Project (the "Wind Project") in Val Verde County, Texas. *Id*. at ¶ 8. In December 2021, GHAE became aware that ERCOT intended on applying LSIPA to prohibit all of GHAE's requests. *Id.* To mitigate its losses, GHAE sought a buyer for the Wind Project, and ultimately entered into an Asset Purchase Agreement ("APA") on January 31, 2022, with Babcock & Wilcox Blue Hills, LLC, which was later acquired by Greenalia and renamed Greenalia Wind Power Blue Hills, LLC ("Blue Hills"). *Id*. at ¶ 9-10.

Under the APA, Blue Hills acquired all rights to the Wind Project and certain related assets, along with options to lease or purchase land from GHAE's affiliate, Brazos Highland Properties LP ("Brazos"). *Id*. at ¶ 11. Blue Hills agreed to pay GHAE an $11 million purchase price, consisting of a $200,000 deposit, a $1 million upfront payment, and two payments of $5 million each after Milestone 1 and Milestone 2, events defined by the APA. *Id*. Milestone 1 required Blue Hills to execute a Standard Generation Interconnection Agreement ("SGIA") with

American Electric Power Service Corporation ("AEP"), as mandated by ERCOT. *Id*. at ¶ 12. Milestone 2 was defined as the date of commercial operation. *Id*. at ¶ 13. Under the APA, Blue Hills was allegedly required to "as promptly as possible" make all filings and submissions required by law and use reasonable "best efforts" to obtain "all consents, authorizations, orders, and approvals from all Governmental Authorities that may be or become necessary for its execution and delivery of [the APA] and the performance of its obligations pursuant to this Agreement." *Id.* at ¶ 14. GHAE further alleges that Blue Hills is prohibited from "willfully tak[ing] any action that will have the effect of delaying, impairing or impeding the receipt of any required consents, authorizations, orders and approvals." *Id*.; ECF No. 44, Ex. 1 at 23 (APA § 6.06(a)). The APA further obligates Blue Hills to "take such further actions as may be reasonably required to carry out the provisions [of the APA] and give effect to the [t]ransactions" contemplated by the APA. ECF No. 3. at ¶ 15; ECF No. 44, Ex. 11 at 27 (APA § 6.16).

On April 22, 2024, Greenalia's CEO, Alberto Expósito, allegedly informed GHAE's Vice President, Jerry Price, that Blue Hills could execute the SGIA within one to two weeks, but that Greenalia's board of directors would not authorize the execution unless GHAE agreed to spread the Milestone 1 payment over the course of 32 months. ECF No. 3 at ¶ 18. GHAE allegedly rejected to modify the terms of the APA, after which Expósito allegedly suggested that Greenalia may convert the Wind Project into a solar project. *Id.*

GHAE alleges that Blue Hills has intentionally failed to provide information that AEP and ERCOT requested for completion of an interconnection study, rather than using its best efforts to execute the SGIA, thereby preventing completion of the SGIA. *Id*. at ¶ 20. GHAE further contends that had Blue Hills acted diligently, it could have executed the SGIA by April

3

2024. *Id*. at ¶ 20-21. On May 13, 2024, GHAE allegedly demanded reasonable assurances of performance from Blue Hills. *Id*. at ¶ 24.

In response, Blue Hills argued that it had no contractual obligations to complete the SGIA or achieve Milestone 1, as the APA's language imposed no obligatory duty on Blue Hills to do so. *Id*. at ¶ 25. On May 31, 2024, GHAE informed Greenalia that it was in material breach of the APA. *Id*. at ¶ 26. On June 7, 2024, Greenalia reaffirmed its position that it was not required to execute the SGIA by the APA. *Id*. at ¶ 27. GHAE subsequently initiated this instant action seeking specific performance of Blue Hills' alleged contractual obligations, reasonable and necessary attorney's fees and cost of suit, and any other relief that the Court deems proper. *Id*. at ¶ 34, 37.

## PROCEDURAL HISTORY

On July 26, 2024, Plaintiff filed the complaint for breach of contract and declaratory judgment. ECF No. 3. On August 8, 2024, GHAE filed a motion for a preliminary injunction enjoining Greenalia from failing to pursue discussions and actions with AEP. ECF No. 9. That same day, this Court issued an Order to Show Cause ("OSHOW") to the Defendant as to why a preliminary injunction should not be issued against them to enjoin Defendant Blue Hills, pending final resolution of this case, from failing to pursue discussions and actions with the AEP to enable AEP to complete a full interconnection study. ECF No. 11.

On September 5, 2024, Defendant filed a Memorandum of Law in opposition to the motion for the preliminary injunction. ECF No. 30. On September 13, 2024, Plaintiff filed their reply memorandum of law to the Defendant's opposition to the Plaintiff's motion for the preliminary injunction. ECF No. 34.

On October 14, 2024, Defendant filed a motion to dismiss for lack of subject matter

jurisdiction, personal jurisdiction, improper venue, and failure to state a claim for relief pursuant to Federal Rules of Civil Procedure Rules 12(b)(1)–(3), 12(b)(6), and *forum non conveniens*. ECF No. 41. On October 16, 2024, Plaintiff filed their memorandum of law in opposition. ECF No. 45. On October 21, 2024, Defendant filed their reply memorandum of law in further support of their motion to dismiss. ECF No. 46. This Court considers this motion fully briefed.

## LEGAL STANDARD

### I.     Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F.Supp.3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000) ). In resolving a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleading to determine whether a plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008).

### II.    Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P 12(b)(2), a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). At the pleading stage, a plaintiff may make a *prima facie* showing by relying on its pleadings and affidavits, and a showing of personal jurisdiction may be established solely by allegations. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013). However, to adequately allege personal jurisdiction, a plaintiff "must include an averment of facts that, if credited by the

5

ultimate trier [of fact], would suffice to establish jurisdiction over the defendant." *Id.* at 85. And while the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013). If the Court lacks personal jurisdiction over a defendant, the claims against that defendant must be dismissed.

### III. Rule 12(b)(3)

Fed. R. Civ. P. 12(b)(3) provides that a court may dismiss a claim for improper venue. *See* Fed. R. Civ. P. 12(b)(3). Where a defendant moves for dismissal under Fed. R. Civ. P. 12(b)(3) based on a forum-selection clause, a court may "treat their motion as a motion to dismiss for *forum non conveniens*." *SingularDTV GmbH v. LeBeau*, No. 21-CV-10130 (VEC), 2022 WL 6771081, at *2 (S.D.N.Y. Oct. 11, 2022); *see also AMTO, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y. 2016) (construing motion "to enforce the forum-selection clause under [Rule] 12(b)(3) ... as proceeding under the *forum non conveniens* doctrine") (citations omitted). "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).

The doctrine of *forum non conveniens* permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo- und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004). "The rationale for dismissing a case on *forum non conveniens* grounds is that "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). In deciding a motion to dismiss based on a forum-selection clause, "a

6

district court typically relies on pleadings and affidavits," unless there are disputed facts that would require an evidentiary hearing. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014) (citations omitted).

## IV.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal,* 556 U.S. at 678, 681 (citing *Twombly,* 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly,* 550 U.S. at 555). To decide the motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture. LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted).

**DISCUSSION**

**I.       Rule 12(b)(1)**

This Court finds that it is appropriate to dismiss this action for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1). The diversity of citizenship statute grants a federal court jurisdiction over suits where plaintiffs and defendants are "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1); *see also Hallingby v. Hallingby, 574* F.3d 51, 56 (2d Cir. 2009) (discussing 28 U.S.C. § 1332(a)(1)). To establish jurisdiction under 28 U.S.C. § 1332, there must be complete diversity of citizenship, such that "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). "[D]iversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." In other words, "'the presence of aliens on two sides of a case destroys diversity jurisdiction,' just like the presence of two citizens of the same state." *Corporacion Venezolana de Formento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980); *see also One World, LLC v. Onofriadis*, 2021 WL 4452070 at *14 (S.D.N.Y. Jan. 19, 2021) ("[A]liens on both sides of [a] lawsuit ... defeats diversity"). For corporate defendants, "[even if a corporation organized under the laws of a foreign nation maintains its principal place of business in the United States], and is considered a citizen of [a state in the United States], diversity is nonetheless defeated if another alien party is present on the other side of the litigation." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989).

Here, there is a dispute between the parties over the citizenship of Defendant Blue Hills. Plaintiff argues that this Court has federal subject matter jurisdiction under 28 U.S.C. §

1332(a)(2) based on diversity citizenship, where the Plaintiff GHAE is a citizen of China and Defendant Blue Hills is a citizen of New York. ECF No. 45 at 2. Defendant, however, argues that there is no diversity jurisdiction because the parties are both citizens of foreign countries where the Plaintiff GHAE is a citizen of China and Defendant Blue Hills is a citizen of Spain, not New York. ECF No. 42 at 7-8. Defendant Blue Hills is a limited liability company whose sole member is Greenalia Wind Power, Inc and is controlled by a sole director, Manuel Garcia Pardo, who works in Spain. Defendant argues that because the sole director works in Spain where he controls and makes decisions regarding Greenalia, Greenalia Wind Power, Inc.'s principal place of business is in Spain and Greenalia itself is thus a citizen of Spain. ECF No. 42 at 8.

This Court finds that for purposes of diversity jurisdiction, Defendant Blue Hills is a citizen of Spain. When determining a party's citizenship for diversity purposes, a limited liability company "takes the citizenship of each of its members." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). The question is whether its principal place of business is Spain or New York. In *Hertz Corp. v. Friend,* the Supreme Court instructed lower courts to apply the "nerve center" test to determine where a corporation's principal place of business is located. 559 U.S. 77, 80–81 (2010). Under the nerve center test, the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92–93. The nerve center "is a single place," usually a corporation's headquarters and always the "actual center" of "direction, control, and coordination." *Id.* at 93. Although the nerve center test is neither as clear-cut nor as simple to determine as the Supreme Court evidently intended, subsequent courts have recognized that the test focuses on where a corporation's "high-level" decisions are made, not where day-to-day activities are managed. *See,*

*e.g., Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 106 (4th Cir.2011); *see also St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015).

Applying this standard, Defendant Blue Hills is a citizen of Spain because its sole LLC member Greenalia Wind Power, Inc.'s principal place of business is in Spain, and an LLC takes the citizenship of its members. *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). At its core, a corporation's "nerve center," and thus its principal place of business for the purposes of diversity of citizenship, is where the lion's share of corporate decisionmaking and direction occurs at the time a lawsuit is initiated, not where corporate decisionmaking may have happened in the past or where it may happen in the future. *See Protostorm, Inc. v. Foley & Lardner LLP*, 18-CV-2107 (PKC) (JO), 2019 WL 4094882, at *6 (E.D.N.Y. Aug. 29, 2019) (plaintiff's testimony established that principal place of business was an executive's "house in Connecticut ... because [they were] not operating out of Delaware yet"); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." (citation omitted)). Here, Spain is the "nerve center" of Greenalia Wind Power, Inc. because the company's sole director works in Spain where he controls and makes executive decisions regarding Greenalia Wind Power, Inc. and Greenalia Wind Power Blue Hills, LLC.

While the Plaintiff may argue that Greenalia Wind Power, Inc. maintains its headquarters and principal address at 230 Park Avenue, Suite 2840, New York, NY 10169, the Plaintiff has failed to plead sufficient facts that suggest that this New York address is where high-level decisions are made. Where Greenalia Wind Power, Inc. is a subsidiary of Greenalia S.A. of Spain, this Court is not persuaded by the Plaintiff's reference to a financial website that states

that the address of "Greenalia Wind Power, Inc." identified as the "governing person" of Greenalia Wind Power Blue Hills, LLC is 230 Park Avenue, Suit 2840, New York, NY 10169. ECF No. 45 at 4. Similarly, the Plaintiff's reference to the New York address being listed on Greenalia S.A.'s publicly available 2022 Financial Results does not support this Court finding that it is the company's principal place of business. *Id*. Courts have found irrelevant the situs of things like "strategic meetings," "tax filings," and "corporate records," since what matters is the situs from where the corporation's high-level officers and directors "overs[ee] and control[ ]" corporate activities. *See CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19, 25 (D.C. Cir. 2016); *see also Benchmark Invs., Inc. v. PAVmed Inc*., No. 20-CV-10888 (VSB), 2021 WL 5967918, at *2 (S.D.N.Y. Dec. 16, 2021) (finding the Defendant's website listing its New York address unpersuasive to establish that its principal place of business in New York).

Finally, the Plaintiff argues that it is persuasive for this Court to find that New York is a principal place of business for Greenalia Wind Power Blue Hills, LLC because Alberto Expósito Seoane, the CEO of "Greenalia Power US," acknowledges that his e-mail signature line lists his address as "230 Park Avenue, Helmsley Building, 28th Floor, Suite 2840, New York, NY" "because Greenalia Power US Inc. leases office space there." Declaration of Alberto Expósito Seoane ("Seoane Decl."), ECF No. 43 at ¶ 4; *see also* ECF No. 45 at 4. In determining the situs of a corporation's nerve center, courts may consider proffered evidence and "sworn declaration[s]" so long as said evidence does not merely provide "self-serving.... legal conclusions." *See, e.g.*, *Signature Fin. LLC v. Chicago Elite Cab Corp.*, 2:16-cv-6063 (DRH)(SIL), 2018 WL 1385896, at *5 (E.D.N.Y. Mar. 19, 2018); *Cofimco USA, Inc. v. Mosiewicz*, 15-cv-9118 (SAS), 2016 WL 1070854, at *4 (S.D.N.Y. Mar. 16, 2016) (declaration not credible where it "parrot[ed] the language of the *Hertz* decision ... without providing any

11

supporting details for the assertions that [declarant] 'directs, controls, and coordinates' " corporate affairs"). However, the Plaintiff fails to recognize that Alberto Expósito Seoane is not an employee or officer of Greenalia Wind Power Blue Hills, LLC or Greenalia Wind Power, Inc. and that he does not control those entities. Seoane Decl., ECF No. 43 at ¶ 2. Alberto Expósito Seoane is the CEO of "Greenalia Power US," which is not the same entity as Defendant Blue Hills or Greenalia Wind Power, Inc. Nor does this reference to leasing office space demonstrate that the New York address is the "nerve center" where high-level decisions are made about Greenalia Wind Power Blue Hills, LLC or Greenalia Wind Power, Inc. Therefore, because the Plaintiff is a citizen of China and the Defendant is a citizen of Spain and there is no diversity jurisdiction, this Court dismisses this case pursuant to Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction.

## II.     Rule 12(b)(2)

In light of the lack of subject matter jurisdiction, this Court declines to decide whether the Defendant has met their burden to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P 12(b)(2).

## III.    Forum Non Conveniens

This Court finds that the Defendant has met their burden to show that the doctrine of *forum non-conveniens* warrants dismissal of this action. When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). Although a forum-selection clause does not render venue in a court "wrong" or "improper" under § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a), which permits transfer to any other district where venue is proper or to

any district to which the parties have agreed by contract or stipulation. *Id*. at 49. Section 1404(a), however, governs transfer only within the federal court system. *Id*. When a forum-selection clause points to a state or foreign forum, the clause may be enforced through the doctrine of *forum non conveniens*. As this Court did not find subject matter jurisdiction and the proper forum lies in a different state court system, the §1404 transfer statute does not apply since that enables transfers between federal courts. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 50 (2013). Given that the forum selection clause here permits litigation only in a federal or state court in a different state (Texas), the proper remedy is dismissal, not transfer. *Cuno, Inc. v. Hayward Indust. Prods., Inc*., No. 03 CIV. 3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005).

  Determining the scope of a forum selection clause is a matter of contractual interpretation, *see Yakin v. Tyler Hill Corp.,* 566 F.3d 72, 76 (2d Cir.2009); *Phillips v. Audio Active Ltd*, 494 F.3d 378, 387 (2d Cir. 2007) (stating that the forum selection clause is "a creature of contract"), and "[t]he Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.,* No. 09–CV–7268 (WB), 2009 WL 4907060, at *3 (S.D.N.Y.2009) (citation omitted). "In general, ... when a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam). "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court."

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc) (quotation marks and citation omitted).

The Second Circuit sets forth a "four-part framework when determining whether to dismiss a claim based on a forum selection clause under the modified doctrine of *forum non conveniens*." *Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023). First, the court examines "whether the clause was reasonably communicated to the party resisting enforcement." *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)). Second, the court evaluates "'whether the clause is mandatory,' that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Id.* (quoting *Martinez*, 740 F.3d at 217). Third, the court determines "whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* (quoting *Martinez*, 740 F.3d at 217). "If the answer to all three questions is yes, the clause is 'presumptively enforceable.'" *Id.* (quoting *Martinez*, 740 F.3d at 217). Finally, the court determines "whether the resisting party has rebutted that presumption by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Martinez*, 740 F.3d at 217). The Court addresses each step of the analysis in turn.

[W]here a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause." *Id.* at 214. Thus, "[t]he analysis of those four factors is governed by a mixture of federal law and the law selected in the parties' contractual choice-of-law clause." *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 251 (S.D.N.Y. 2017). "The Second Circuit has held that federal law governs the first and fourth steps of forum selection clause analysis regardless of the

14

existence of a choice of law provision." *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 409 (S.D.N.Y. 2012). "In answering the *interpretive* questions posed by parts two and three of the four-part framework, however, [courts in the Second Circuit] normally apply the body of law selected in an otherwise valid choice-of-law clause," *Martinez*, 740 F.3d at 217-18 (emphasis in original), which in this case is Texas law. Pardo Decl., Ex. 1, § 10.10(a). ("This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas").

### i. The Forum Selection Clause Was Reasonably Communicated

This Court finds that the forum selection clause was reasonably communicated to the Plaintiff. The forum selection clause in section 10.10(b) of the APA states:

> Any legal suit, action or proceeding arising out of or based upon this agreement, the ancillary documents or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America or the courts of the State of Texas in each case located in the City of San Antonio and County of Bexar, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

Here, both the Plaintiff and Defendant in this action signed the APA, which applies to this instant breach of contract claim. *See* Pardo Decl., Ex. 1, § 10.10(b); Ex. 1, Signature Page.

### ii. The Forum Selection Clause is Mandatory

This Court finds that the language of the forum selection clause is mandatory as opposed to permissive. As noted previously, because the APA contains a Texas choice of law clause, this Court looks to Texas law to determine whether the forum-selection clause is permissive or mandatory. Pardo Decl., Ex. 1, § 10.10(a). ("This Agreement shall be governed and construed in accordance with the internal laws of the State of Texas"); *see also ProFrac Holdings II, LLC v. Kuzov*, No. 4:24-CV-00531-P, 2024 WL 3581985, at *2 (N.D. Tex. July 30, 2024).

15

According to the Texas Supreme Court, language is ambiguous only if it yields "more than one reasonable interpretation." *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016). But ambiguity is determined only after applying standard rules of contract construction. *Phx. Network Techs. Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 615 (Tex. App.—Houston [1st Dist.] Aug. 25, 2005, no pet.). In fact, "[i]f, after the application of contract construction rules, a contract such as a forum selection agreement is susceptible of only one reasonable meaning, the contract is unambiguous." *Id.* Texas contract construction rules deem that the Court's primary concern when interpreting contract language is to ascertain and give effect to the parties' intentions, as expressed in the contract language. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333–34 (Tex. 2011). Undefined contractual terms are typically assigned their ordinary meaning. *Sw. Royalties*, 500 S.W.3d at 405. That meaning, however, must be "in harmony and consistent" with the contract's other terms, and "[i]f a different, more limited, or precise definition is apparent from the term's use in the context [ ], we apply that meaning." *Id.* Ultimately, the contract's words are determined both by context and intent of the parties. *See Italian Cowboy*, 341 S.W.3d at 333.

Here, the intent of the parties was clearly to give courts in the County of Bexar exclusive jurisdiction over any claims arising from the APA. The mandatory language of "exclusive jurisdiction" in the clause "clearly demonstrate[s] the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see* ECF No. 42 at 14. While the Plaintiff argues that the word "may" deems the clause permissive, this term must be interpreted in context vis-à-vis the rest of the clause. *See* ECF No. 45 at 7. The clause says that a relevant lawsuit "may be instituted in federal courts of the United States of America or the courts of the State of Texas in each case located in the City of San

Antonio and County of Bexar." ECF No. 44, Ex. 1 at 33 (APA § 10.10(b)).  The word "may" read in the context of the clause confers discretion as between state and federal forums, not between County of Bexar forums and non-County of Bexar forums. Indeed, this limited meaning of "may" is "in harmony and consistent" with the rest of the forum selection clause. *Sw. Royalties*, 500 S.W.3d at 405. Interpreting "may" as rendering the entire forum selection clause permissive would also directly conflict with the parties' intent.

Under Texas law, when a forum-selection clause contains both mandatory and permissive language, the mandatory controls over the permissive. *In re Fisher*, 433 S.W.3d 523, 533 (Tex. 2014) (finding a forum selection clause containing "agrees not to bring any proceeding ... in any other court" but "non-exclusive jurisdiction" to be mandatory). Other district courts in Texas have found identical language to be mandatory. *See, e.g.*, *LaBarge Coating, LLC v. LaBarge C&R LLC*, No. H-18-3961, 2018 WL 7290898, at *3 (S.D. Tex. Dec. 17, 2018) (finding that "may" allows a choice between state or federal court, while "in each case" and "exclusive jurisdiction" make the clause mandatory). The mere fact that the clause includes "may" does not render the use of "exclusive jurisdiction," "in each case," and "irrevocably submits" also permissive—and no reasonable interpretation could suggest otherwise. Here, the parties clearly intended that state or federal courts in the County of Bexar have exclusive jurisdiction over disputes arising from the contract. Therefore, this Court finds that the forum-selection clause in the APA is mandatory.

### iii.    The Claims and Parties in the Suit are Subject to the Forum Selection Clause

This Court finds that the claims and parties are subject to the mandatory forum selection clause. The third prong of this analysis requires courts to determine "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active*

17

*Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). A court determining the scope of such a clause must "'examine the substance of th[e] claims, shorn of their labels,' and relate[ ] the substance of the claims 'to the precise language of the clause,' 'discount[ing] the precedential weight of cases that deal with dissimilarly worded clauses.'" *Prod. Res. Grp., L.L.C.*, 907 F. Supp. 2d at 412 (quoting Phillips, 494 F.3d at 388-90). Here, both the parties do not dispute that they are subject to the forum selection clause and that this breach of contract claim is subject to the forum selection clause. *See generally* ECF No. 42; *see also* ECF No. 45. Instead, the instant dispute between the Plaintiff and Defendant is whether the appropriate forum is in New York or Texas based on the mandatory or permissive language of the forum selection clause.

### iv.   Plaintiff Does Not Rebut the Presumption of Enforceability

This Court finds that the Plaintiff does not rebut the presumption of enforceability. Because the first three prongs of the *Phillips* inquiry have been satisfied, the forum selection clause is presumptively enforceable. *See Phillips*, 494 F.3d at 383-84. Once the court deems a forum selection clause presumptively enforceable, a party seeking to avoid enforcement bears a "heavy burden" of rebutting this presumption. *E.g., Bluefire Wireless, Inc.,* 2009 WL 4907060 at *2. Plaintiff may avoid enforcement by demonstrating that "(1) ... incorporation [of the clause] was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips,* 494 F.3d at 392. "The Supreme Court has construed this exception narrowly," *Tropp v. Corp. of Lloyd's,* 385 F.App'x. 36, 37 (2d Cir.2010) (citation omitted), and Plaintiff has failed to meet this demanding burden. Here, the Plaintiff has not satisfied their burden of establishing that enforcement of the forum selection clause at issue

would be unreasonable or unjust. As the clause provides for venue in the state or federal courts in the County of Bexar, proceeding with this action in federal court in Texas would not overly burden the parties nor would it raise any issues of fundamental unfairness that would warrant maintaining the action in this Court. Therefore, this Court will not disturb the clearly intended expectations of the parties with respect to the mandatory forum selection clause.

### IV.     Rule 12(b)(6)

In light of the above, this Court declines to decide whether the Defendant has met their burden to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6).

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED**. The Clerk of Court is hereby directed to terminate all motions and close this case.

**SO ORDERED.**

Dated: March 26, 2025
         New York, NY

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**